[Civ. No. 5876. First Appellate District, Division One.—August 16, 1927.]

VANDERBILT MINING COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and JOHN A. McFARLANE, Respondents.

R. P. Wisecarver and Redman & Alexander for Petitioners.

G. C. Faulkner for Respondents.

TYLER, P. J.—*Certiorari* to review an award of the Industrial Accident Commission. It is alleged therein in substance that on January 30, 1924, respondent John A. McFarlane filed an application for adjustment of claim under the Compensation Act (Stats. 1917, p. 831), in which it was alleged that he sustained an injury by slipping on a

timber while working for Vanderbilt Mining Company at Ivanpah, California, on September 26, 1923, causing abrasion of his right shin and a strain of the right knee. That evidence taken upon the hearing showed that McFarlane had worked for several days following this injury and that he had been treated for superficial injury of the leg by a Dr. Brook of Las Vegas, Nevada, but after about two weeks' time he went to Bakersfield and placed himself under the care of doctors of that city. That shortly after the first day of January following, the insurance carrier had him removed to Los Angeles, where a complete examination was made by specialists on behalf of the company, and also by a referee doctor appointed by the Industrial Accident Commission; that the medical evidence showed that McFarlane was suffering from a Charcot joint of the knee caused by syphilis; that a Charcot joint is one evidence of the disease known as "tabes dorsalis," often referred to as "locomotor ataxia." Thereafter findings and award were issued April 12, 1924, by which it was determined that McFarlane had scraped the inner aspect of his right leg from the knee to the ankle, approximately precipitating a previous diseased condition resulting in a Charcot knee. As a result of this injury the Commission found that disability had continued from October 5, 1923, to and including February 6, 1924, which on maximum earnings amounted to $348.16 compensation; that it was necessary to do a fixation operation of the right knee-joint, together with anti-syphilitic treatment. It was further found that the proper apportionment between the disease and injury was to award applicant certain medical and surgical care without compensation from and after February 6, 1924, as said injury might result in permanent disability which in such event would be rated subsequently upon request and the filing of medical reports. This award became final. Thereafter McFarlane refused to accept the operation on his knee, and the Commission found the refusal justified. McFarlane then filed a request for a permanent injury rating. The Commission filed its decision upon this petition September 3, 1924, in which it held the condition to be permanent, consisting of what is technically known as Charcot knee, and it further found that the proportion of permanent disability attributable to the injury, and not to the pre-existing disease, had been fully compen-

sated by the compensation awarded for the temporary disability in the previous award. On September 22, 1924, McFarlane filed a petition for rehearing in which he set forth, among other things, that he had paid out over $770 for medical expense while in Bakersfield, prior to the first hearing, and he asked that the Commission grant him a further award in reimbursement for such expense. On October 17, 1924, this petition came on for a rehearing and was denied. Following this decision McFarlane then petitioned for a writ of review in the district court of appeal, second appellate district, division two, which petition was denied on December 9, 1924. Thereafter, on April 22, 1926, some sixteen months later, McFarlane filed a petition for further compensation based on new and further disability and also for an allowance for medical bills, said petition setting forth that on September 26, 1925, it had become necessary for him to have his leg amputated because of the Charcot knee. Applicant asked for a further allowance of compensation on account of the loss of his leg and for the medical, surgical, and hospital expense incurred in connection therewith, and the sum of $933.85 to cover medical expenses that were incurred previous to the first hearing, a part of which had, it is claimed, been the subject of the petition for writ of review which had been denied. Petitioners herein answered said application and set up that the said matter had become *res judicata* and that the denial of the writ of review established the previous decisions of the Commission as the law of the case. Thereafter on July 21, 1926, the Commission entered its decision on applicant's petition for further compensation in which it determined that (1) the order and decision of September 3, 1924, was a final decision upon the claim for disability compensation and therefore the applicant was entitled to no further compensation for permanent disability; (2) that McFarlane was entitled under the award of April 12, 1924, to certain medical and surgical treatment and such treatment had not been furnished by petitioners herein; and (3) that as the applicant's claim for such medical treatment had not been acted on in the denial of the petition for rehearing on September 22, 1924, the case should be set down for further hearing as to such medical expense. Thereafter McFarlane filed a petition for rehearing on July 9, 1926, claiming that the amputation of the leg was a new

and further disability and the Commission granted the petition and subsequently on April 2, 1927, rendered two decisions. Under the first, medical expense incurred prior to the first hearing was disallowed, but an award was made for anti-syphilitic treatment subsequent to the first hearing, and prior to the amputation of the leg, in the amount of $187.50, for which an award was made. Under the second, it was found that the employee was entitled to a new and further disability by reason of the amputation of the leg above the knee which was rated at seventy-three and three-fourths per cent, amounting to $20.83 a week for 240 weeks and thereafter $4.41 a week for life, but as said disability was caused in part by pre-existing disease and in part by injury, that the proportion of said disability attributable to the injury was twenty-five per cent, which reduced the amount to $5.21 for 240 weeks, and thereafter $1.10 a week for life. It also found the reasonable medical expense to be $141.10 for the cost of amputation, one-quarter of which is $35.28 and award was made accordingly. Petitioners aver in support of the present application that the Commission in entering its decision of April 2, 1927, acted without and in excess of its powers; that the findings and award are not sustained by the evidence and the findings do not sustain the awards, and, further, that they are unreasonable. It is also claimed that the award of September 3, 1924, was a complete decision of the case as it disposed of all issues up to that date, which included anti-syphilitic treatment, and the fact that the knee should not be operated on. That the condition of Charcot knee is a diseased condition and the award contemplated that the disease might become worse and might necessitate an operation to amputate it, in accordance with the course of such disease; that there was no rating of the amount of permanent disability, but the findings were general that the full disability of the employment for precipitating an impending Charcot knee had been fully compensated and the final order that applicant take nothing further was a complete disposition of that issue; that a denial of the writ of review to the district court of appeal confirmed this and that, therefore, the Commission could not reopen the case and give further relief for the same condition of Charcot knee existing eighteen months later. It is further claimed that the anti-syphilitic medical treatment

was part and parcel of the treatment for the operation ordered, which had never been accepted, and that therefore the Commission was without jurisdiction to entertain the claim of further disability or medical treatment due to the syphilitic condition after the findings and awards of April 12, 1924, and September 3, 1924, which fixed the total liability for these claims and which had become final. In support of the claim that the disability benefits had become final petitioners argue that the fact that the Charcot knee condition necessitated an amputation after the original awards had been made, could in no manner affect their liability, as such operation was rendered necessary as the proximate result of the disease known as Charcot knee, and not as a new development *of the injury*. We cannot subscribe to this contention. The medical evidence showed that the disease known as Charcot knee is developed by a traumatic injury such as the employee suffered, where a pre-existing syphilitic condition exists. ■ In accordance with this evidence the Commission in the original award of April 12, 1924, found that the injury suffered by McFarlane proximately precipitated the pre-existing diseased condition resulting in a Charcot knee. By this award it was definitely established that the injury complained of was temporary in character and consisted of a Charcot knee which was due to both injury and pre-existing quiescent syphilis. The award made upon the petition for a permanent disability rating filed September 3, 1924, was to the same effect. At the time of the filing of this last final award the employee had not suffered an amputation of his leg. It cannot be successfully argued that this loss did not constitute "new facts" such as would confer jurisdiction upon the Commission under section 20 (d) of the Compensation Act to amend its prior awards. A different and more complete permanent disability resulted from the operation than that determined by the award of September 3, 1924. The nature of this new disability was a progression of the permanent character of such condition which was originally caused or contributed to by both disease and injury. Under these circumstances the Commission was justified in entertaining and granting a petition for rehearing upon applicant's request for further compensation and in the making of its award of April 2, 1927, as above recited. The extent and

apportionment thereof was fixed and established by the Commission under a schedule adopted by the Commission pursuant to statute. It was a determination of a fact within its jurisdiction. ■ Equally without merit is the further contention that the award of September 3, 1924, terminated all liability for medical treatment under the award of April 12, 1924. This original award ordered petitioner to furnish a surgical operation, together with anti-syphilitic treatment as suggested by Dr. Jones in a report filed with the Commission. The treatment was a thing separate and apart from the operation provided for. The subsequent decision on petition for permanent disability did not deal with this question, but the decision upon applicant's petition for further compensation filed April 23, 1926, and decided June 21st, following, expressly recites that this matter was not passed upon, and it orders that the cause be set for further hearing on the claim for medical expense under the provisions of the findings and award filed April 12, 1924. The supplemental award of April 2, 1927, for the first time determined the amount to be allowed for treatment. The applicant was entitled to medical aid for the disease from which he was suffering by reason of the fact that the injury he received produced in part a condition requiring medical treatment. The award of April 12, 1924, so determined and it has long since become final. The amount to which he was entitled was passed upon for the first time in the supplemental award of April 2, 1927, and the amount so found to be due finds support in the evidence.

The award is affirmed.

Knight, J., and Cashin, J., concurred.

An application by petitioners to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 13, 1927.